PEOPLE v. CALDWELL.

1. CRIMINAL LAW—COMPLAINT—JURISDICTION TO ISSUE WARRANT—
LOCAL OPTION LAW.

The complaint and examination preliminary to the issuance
of a warrant of arrest for an offense not cognizable by a jus-
tice of the peace (e. g., a violation of the local option law) need
not be reduced to writing, and, therefore, in the absence of a
contrary showing, it will be presumed that the magistrate had
sufficient proof before him to confer jurisdiction to issue the
warrant.

2. SAME.

The presumption so obtaining is not affected by the fact that
a written complaint was taken, the averments of which
were insufficient to authorize the issuing of a warrant, where
it does not appear that no other evidence was adduced.

3. VIOLATION OF LIQUOR LAW—JURORS—EXAMINATION AS TO COM-
PETENCY.

A conviction for a violation of the liquor law will not be
reversed because the trial court required counsel for the re-
spondent so to modify a question asked of a juror on his voir
dire as not to suggest that he would have a desire to give his
verdict one way or the other if the evidence should be even,
but to ask him merely whether he would have such a desire,
or which way he would find under such circumstances.

4. SAME—EVIDENCE.

Upon a prosecution for keeping a place for the sale of intoxicat-
ing liquors, in violation of the local option law, evidence of
sales made prior to the date alleged in the information, ex-
tending over a period of three months, is admissible, as bear-
ing upon the character of the place kept by respondent at the
time charged.

5. CRIMINAL LAW—WITNESSES—LEADING QUESTIONS.

The trial court may, in its discretion, permit the prosecution
to put leading questions to a witness for the people whose
answers are evasive, and who evinces a disposition to favor
the respondent.

6. SAME—TRIAL—MISSTATEMENT OF EVIDENCE.

An inadvertent misstatement of an item of testimony by the
trial judge in his instructions to the jury is not ground for a
reversal, where the remark passed unchallenged at the time,
and was apparently not prejudicial.

Exceptions before judgment from Hillsdale; Lane, J. Submitted November 21, 1895.   Decided December 10, 1895.

Henry W. Caldwell was convicted of violating the local option law.   Affirmed.

*Frankhauser Bros.*, for appellant.

*Guy M. Chester*, Prosecuting Attorney, for the people.

LONG, J.  Respondent was convicted of keeping a place where intoxicating liquors were sold as a beverage, in violation of the local option law in Hillsdale county.

1.  It is contended that the justice acquired no jurisdiction to issue the warrant, for the reason that there was no evidence before him that the local option law was in force in that county.  On the examination a motion was made to discharge the respondent for that reason, and such motion was again made in the circuit court at the time respondent was arraigned.  Respondent contends that the only evidence of that fact before the justice was the examination of one George Taylor, and that he had no such knowledge of the existence of local option in that county as to enable him so to testify; that the only competent proof of such fact was the record of the proceedings of the board of supervisors, or a certified transcript thereof; that the local option statute provides how that fact shall be established.

Section 17 of the act provides: ·

"Upon the trial for any violation of the provisions of section one of this act, it shall be competent to introduce the record, or a certified transcript thereof, of the preamble and resolution of the board of supervisors of such county, required by section thirteen of this act, and such record and transcript shall be the evidence that the provisions of this act are in full force within such county, and that the manufacture, sale, keeping for sale, giving away, or furnishing of any of the liquors herein desig-

nated, and the keeping of a saloon or any other place for the manufacture, sale, or storing for sale or giving away or furnishing of the same, is prohibited and unlawful, and shall also be the evidence of the suspension and superseding of the provisions of the general laws of this State for the taxation and regulation of the business of manufacturing, selling, keeping or offering for sale, giving away or furnishing, of any of the liquors hereinbefore designated, so far as relates to the territory and municipalities within the limits of such county, so long as such resolution remains unrepealed." 3 How. Stat. § 2283b6.

The record here does not contain the warrant issued by the justice. The complaint is returned, but none of the other proceedings or papers had before the justice. The warrant may have recited that oral proofs were also taken, and that the proceedings of the board of supervisors were before the justice. Unless the contrary be shown, we must presume that the justice had the legal evidence before him which authorized the issuing of the warrant. He had no authority to try and determine the case, and the complaint need not have been in writing. The mere fact that a written complaint was taken does not exclude the presumption that he had other evidence before issuing the warrant. It is true that, if the warrant recites that it was issued upon the examination contained in the complaint, we may then look into the complaint to ascertain whether the facts therein stated confer jurisdiction upon the justice to issue the warrant; but where no showing is made as to what the evidence was, and all the evidence which the justice had before him, we must presume that sufficient evidence was adduced. The evidence so taken before the warrant issues need not be taken down by the justice, and need not be returned to the court when the party is held for trial. These proceedings are entirely *ex parte*, and are for the purpose of satisfying the justice that there is probable cause to believe that an offense has been committed. *People* v. *Bechtel*, 80 Mich. 630, and cases there cited.

2. It is contended that the court was in error in ruling out a question put to one of the jurors in his examination on *voir dire.* He was asked:

"Which way would you desire to give your verdict if the evidence was all in, and you found that it was just even,—as much one way as the other? Which way would you want to give your verdict—desire to give it? Which way would you lean,—for the people or for the defendant?"

*By the Court:* "I think the court ought to say here that a question of this kind ought not to assume that a man would have a desire to go one way or the other under those circumstances, because, if he does, it makes the juror incompetent always. If he manifests a desire to go either way, of course he is an incompetent juror in the case. I think the question ought not to suggest that he would have a desire, and simply require the witness to give an answer that he would go one way or the other. The question ought to be amended by incorporating that idea, or the witness not be required to answer."

It appears that, before the jury were sworn, the respondent had exhausted his peremptory challenges.

We need not determine whether the question was proper, under the rule laid down in *Monaghan* v. *Insurance Co.,* 53 Mich. 245, and cases there cited. As explained by the trial court, the question suggested that the witness would have a desire to go one way or the other; and all that the court asked of counsel was to frame his question so that this suggestion would be eliminated, and the juror required to answer whether he would have a desire to go one way or the other, or which way he would find. In *People* v. *Keefer,* 97 Mich. 19, the question was asked a juror: "If the evidence in this case, as between the people and the defendant, was equally balanced, which way would you give a verdict on the charge of engaging in the saloon business,—for the people or for the defendant?" The exclusion of this question was held to be error. Under the suggestion of the court in the present case, counsel would have had an opportunity to ascertain

the state of the juror's mind in reference to the saloon business, and how he would have found under the facts suggested; but this counsel declined. No reason is given for declining the question tendered by the court. We think the case should not be reversed on this ground.

3. The information alleged the keeping of a place where intoxicating liquors were sold as a beverage on December 25, 1893. The court permitted the prosecution to show several sales of liquors prior to that time, extending over a period of about two or three months. This is assigned as error. The court, in admitting the evidence, stated the purpose for which it might be considered, and in the charge stated to the jury:

"There has been evidence introduced here of other transactions which took place in this place of business on other days than this 25th day of December. They are before you for the purpose of aiding you in coming to your conclusion as to the character of the place which was kept by Mr. Caldwell on this 25th day of December, and not for any other purpose. In other words, even though you might find that during fair week, for instance, he had kept a place where intoxicating liquors were kept for sale or sold in violation of law, and were not able to come to the conclusion from the evidence that he kept such a place on the 25th day of December, then he should not be convicted here. The conviction here must be for keeping a place on this 25th day of December. This is simply for the purpose of aiding you in coming to your conclusion of the character of the place which was kept by this defendant."

The case falls directly within the ruling of this court in *People* v. *Hicks*, 79 Mich. 457. Hicks was charged with having unlawfully engaged in the business of selling and keeping for sale spirituous and intoxicating liquors. Several sales were shown prior to the time charged in the information. It was said:

"The sales by defendant at any time after the first Monday in May were as unlawful as those made on May 19th; and the fact that he made sales on such days, while

not proof of a substantive offense under the allegations in the information of the carrying on of business on that day, yet was competent as tending to show sales on the day in question."

The same doctrine is laid down in Black on Intoxicating Liquors (section 514), and Bishop's New Criminal Procedure (volume 1, §§ 397, 402), though it is said that the Massachusetts rule is different; but Mr. Bishop questions the Massachusetts rule.

4. Error is assigned upon the ruling of the court in permitting the prosecution to ask leading questions of a witness called by the people, and to cross-examine such witness. It is apparent from the record that the witness was willing to answer the interrogatories propounded by defendant's counsel, and was evasive when being examined by the prosecution. The court permitted the prosecution to examine the witness at some length, and put leading questions, and we think properly, under the rule in *McBride* v. *Wallace*, 62 Mich. 453; *People* v. *Deitz*, 86 Mich. 430.

5. The court, in its charge to the jury, called their attention to the testimony of the witnesses Taylor and Mrs. Hayes, and stated:

"It is claimed by the people that on this day in question Mr. Caldwell was keeping a place on St. Joseph street; that it was a public place; that, on the afternoon or evening of this day, two persons—young Taylor and Mrs. Hayes—came there to this place of business, and bought a couple of half pints; that the man Taylor bought the liquor, a part of which was whisky and a part of which was blackberry wine; that afterwards they went into the saloon together, at the invitation, if I understand rightly, of Mr. Caldwell, and there drank two or three times of intoxicating liquors; that they were made drunk at that time, were taken by the defendant upstairs, put on the bed, where they remained until early the next morning about four o'clock, when they got up, got into their buggy, and went to the home of the girl."

These facts, it is conceded, were all testified to, except the remark that they were "put on the bed." It is contended by defendant that this statement is not borne out by the evidence. It will be noticed that the court said, "If I understand rightly," these were the facts claimed by the people. At the time of the charge, counsel made no objection to this statement, and sought in no way to have it corrected, and for the first time makes the complaint here that it was prejudicial to the defendant. If, at the time, counsel had called the attention of the trial court to it, and the statement was not borne out by the testimony, the court would undoubtedly have corrected it. That is the way, the court stated, he understood the testimony, and the statement was left unchallenged by counsel. If it was prejudicial to respondent, the time to have corrected it was then, by calling the attention of the court to it, either at the time the charge was given or at its conclusion. The case does not fall within the ruling of this court in *Cousins* v. *Railway Co.*, 96 Mich. 390. There the plaintiff offered no testimony which tended to show that she had expended any money in an attempt to be cured of her injuries. The court stated to the jury that she had expended considerable money in seeking to be cured, and that she was entitled to recover such amount as would reasonably compensate her for the moneys she had expended in seeking to cure herself of her injuries, etc. These moneys so expended were the basis of her recovery. In the present case the remark was inadvertently made. The testimony showed that Caldwell sold Taylor and Mrs. Hayes whisky, which they drank in his presence, until they were both drunk. Taylor says he was dead drunk, and that the next morning he found himself in a room upstairs over the saloon, and on the bed with Mrs. Hayes. She testified that she drank there of whisky furnished by Caldwell, and became dead drunk, and the next morning found herself in the room

upstairs over the saloon, on the bed with Taylor. Just how they came to be on the bed is not explained. Under the circumstances, we are unable to say that, if any error was committed, it was prejudicial to the defendant. If the testimony is true, it all occurred in his place of business, and the room where the parties found themselves on the bed was within his control.

6. Complaint is made of some of the remarks of the prosecutor, but, as we think the case should not be reversed upon the ground that they were improper, the question will not be discussed.

We find no error in the record, and the conviction must be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., took no part in the decision.